UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JEFFREY J., <br><br>       Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br>       Defendant. | **REPORT AND RECOMMENDATION TO REVERSE AND REMAND COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:25-cv-00503 <br><br> District Judge David Barlow <br><br> Magistrate Judge Daphne A. Oberg |

Jeffrey J.[1] brought this action for judicial review of the denial of his application for supplemental security income.[2]  The Administrative Law Judge (ALJ) who addressed Mr. J.'s application determined he did not qualify as disabled.[3]  Mr. J. claims the ALJ erred in evaluating both his subjective symptoms and a consultative examiner's medical opinion.[4]  Because the ALJ's rationale for discounting the consultative examiner's opinion is unsupported and inadequate, the undersigned[5] recommends the district judge

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 14–28, Doc. No. 9.)

[4] (Opening Br. 6, 11, Doc. No. 18.)

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 8.)

reverse the decision of the Commissioner of the Social Security Administration and remand for additional administrative proceedings.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the decision to determine whether substantial evidence supports the ALJ's factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 1382c(a)(3)(A).

[14] *Id.* § 1382c(a)(3)(B).

5) he has the residual functional capacity to perform other work, considering his

age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at

step five, the Commissioner must show the claimant retains the ability to perform other

work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. J. applied for supplemental security income under Title XVI of the Social

Security Act.[18]  After an administrative hearing,[19] the ALJ found Mr. J. not disabled and

denied benefits.[20]

At step two of the sequential evaluation, the ALJ found Mr. J. had the severe

impairments of "mild bilateral osteoarthritis of the knees; essential hypertension;

obesity; ongoing alcohol abuse disorder; recurrent major depressive disorder with

psychotic features, alternatively characterized separately as major depression disorder

and schizophrenia; post-traumatic stress disorder (PTSD); and generalized anxiety

---

[15] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 203–33); 42 U.S.C. §§ 1381–1385.

[19] (Tr. 35–75.)

[20] (Tr. 14–28.)

disorder (GAD)."[21]  The ALJ also found nonsevere physical impairments.[22]  At step three, the ALJ concluded Mr. J.'s impairments did not meet or medically equal an impairment listing.[23]

The ALJ then found Mr. J. had the residual functional capacity[24] (RFC) to perform "light work" with the following limitations:

> He can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently.  He can stand or walk up to six hours in an eight-hour workday (with normal breaks) and can sit up to six hours in an eight-hour workday (with normal breaks).  He can never climb ladders or scaffolds and can occasionally climb ramps or stairs.  He can frequently stoop, kneel, crouch, and crawl.  He cannot be exposed to extreme cold, vibration, or hazards such as high exposed places and moving mechanical parts.  He can understand, remember, and carry out simple instructions.  He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas.  He can occasionally interact with supervisors, coworkers, and the public.  He can deal with occasional changes in a routine work setting.[25]

---

[21] (Tr. 17.)

[22] (*Id.*)

[23] (Tr. 18–21.)

[24] A claimant's RFC is the most he can do in a work setting considering his limitations. *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996). In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 1996 SSR LEXIS 5, at *5. The ALJ considers all relevant medical and other evidence in the record.  20 C.F.R. § 416.945(a)(3).

[25] (Tr. 21.)

At step four, based on the RFC assessment and the testimony of a vocational expert, the ALJ found Mr. J. could not perform his past work.[26]  But at step five, the ALJ found Mr. J. capable of other jobs in the national economy including housekeeper, mail sorter, and marker.[27]  The ALJ also found that while Mr. J.'s alcohol use was ongoing, his "substance use disorder [was] not material to the determination of disability because even in its presence, [Mr. J.] [had] the above residual functional capacity and [could] perform a significant number of jobs."[28]  Accordingly, the ALJ found Mr. J. not disabled and denied his claim.[29]  This decision became final when the Appeals Council denied Mr. J.'s request for review.[30]

## ANALYSIS

Mr. J. raises two claims of error relating to the ALJ's RFC determination.  First, he contends the ALJ erred in discounting the medical opinion of the psychological consultative examiner, Dr. Tracy Copp.[31]  Second, he argues the ALJ failed to properly evaluate his subjective symptoms.[32]  Because Mr. J. is correct on the first issue, and this error requires remand, the second issue is not addressed.

---

[26] (Tr. 26.)

[27] (Tr. 27.)

[28] (Tr. 24.)

[29] (Tr. 28.)

[30] (Tr. 1–3.)

[31] (Opening Br. 6–11, Doc. No. 18.)

[32] (*Id.* at 11.)

In determining a claimant's RFC, an ALJ must assess the persuasiveness of medical opinions and prior administrative findings based on: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with evidence from other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[33]  The last category includes "evidence showing a medical source has familiarity with the other evidence in the claim" or an understanding of the program "policies and evidentiary requirements."[34]  The most important factors are supportability and consistency—the ALJ must explain how he evaluated both.[35]

After performing a psychological consultative examination of Mr. J.,[36] Dr. Copp diagnosed him with PTSD, schizophrenia, generalized anxiety disorder, and "major depressive disorder, moderate."[37]  She opined he could "understand, carry out, and remember instructions for simple procedures," but he was significantly impaired in: sustaining concentration and persisting in work-related activity at a reasonable pace; maintaining effective social interaction with supervisors, co-workers, and the public; and

---

[33] 20 C.F.R. § 416.920c(b), (c)(1)–(5).

[34] *Id.* § 416.920c(c)(5).

[35] *Id.* § 416.920c(b)(2).

[36] (Tr. 761–65.)

[37] (Tr. 764.)

handling normal pressures of a competitive work setting.[38]  Dr. Copp opined Mr. J.'s

symptoms diminished his executive cognitive capabilities, but his conditions did not

affect his physical abilities.[39]  She also opined that, at that time, he could not effectively

manage his affairs or act in his own best interest—but she noted, with treatment, he

should be able to manage his affairs independently.[40]

The ALJ found Dr. Copp's opinion "partly persuasive"[41] and provided the

following explanation:

> While Dr. Copp was able to examine the claimant firsthand, the claimant's
> inconsistent statements render Dr. Copp's opinion less persuasive than the
> [state agency] psychiatric consultants' findings, which are more consistent
> with the entire record and consider the claimant's alcohol use and mental
> health treatment.  Although Dr. Copp's opinion is supported by her
> examination findings, it is not consistent with the overall evidence found in
> the record.  For example, I note that nothing in Dr. Copp's examination
> report indicates that the claimant told Dr. Copp about his methadone
> prescription or use or his ongoing alcohol consumption.  The state agency
> medical consultants are experts on the Social Security program, while Dr.
> Copp is not.  This is particularly important here, as the agency's regulations
> about drug and alcohol abuse are implicated by evidence of the claimant's
> substance use.  Moreover, the specialties of each of the medical sources in
> question here are equal.  Hence, I am more convinced by the state agency
> medical consultants' opinions but have tempered them to some extent to
> the claimant's benefit.[42]

---

[38] (*Id.*)

[39] (*Id.*)

[40] (*Id.*)

[41] (Tr. 25.)

[42] (*Id.*)

Mr. J. argues the ALJ did not give valid reasons for discounting Dr. Copp's opinion.  First, Mr. J. suggests the ALJ improperly relied on his failure to disclose his ongoing alcohol use to Dr. Copp, noting the ALJ found his alcohol use "immaterial" elsewhere in the decision.[43]  Next, Mr. J. argues the ALJ used flawed rationale to find Dr. Copp's opinion less persuasive than the prior administrative findings, where there is no evidence the state agency consultants considered Mr. J.'s alcohol use (as the ALJ claimed).[44]  Finally, Mr. J. contends the ALJ's statement that Dr. Copp's opinion was inconsistent with "the overall evidence" was insufficiently vague.[45]

As an initial matter, the ALJ's finding that Mr. J.'s alcohol use was immaterial to the disability determination[46] does not render it irrelevant to the RFC assessment. "Material" has a specific meaning in the context of social security claims involving substance use.  If an ALJ finds a claimant disabled when using alcohol or drugs, the ALJ must determine whether the claimant would still be disabled if the substance use

---

[43] (Opening Br. 7, Doc. No. 18.)

[44] (*Id.* at 9–11.)

[45] (*Id.* at 8.)

[46] (*See* Tr. 24.)

were removed.[47]  If not, the substance use is "material" and the claim must be denied.[48]

In other words, "material" in this context means substance use is the deciding factor

between a claimant qualifying as disabled or not disabled.

Here, the ALJ found Mr. J.'s substance use not "material" to the disability

determination because Mr. J. did not qualify as disabled even in the presence of

substance use.[49]  The ALJ explained that even during periods of ongoing alcohol use,

Mr. J. still had the RFC to perform jobs in the national economy.[50]  But the ALJ needed

to consider all impairments, including Mr. J.'s alcohol use disorder, in determining his

RFC in the first instance.[51]  And the ALJ could permissibly consider the fact that Dr.

---

[47] *See* 42 U.S.C. § 1382c(a)(3)(J) (providing a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination"); 20 C.F.R. § 416.935(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."); SSR 13-2p, 2013 SSR LEXIS 2, at *3 (Jan. 1, 2013) ("When . . . we determine that a claimant is disabled considering all of the claimant's medically determinable impairments (MDIs), we must then determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol; that is, we will determine whether [substance use] is '*material*' to the finding . . . .").

[48] *See* 20 C.F.R. § 416.935(b)(2)(i).

[49] (Tr. 24.)

[50] (*Id.*)

[51] *See* SSR 13-2p, 2013 SSR LEXIS 2, at *13 (noting the ALJ must "[a]pply the appropriate sequential evaluation process to determine whether the claimant is disabled considering all of his or her impairments, including [substance use]."). Agency guidance provides that for some claims involving substance use, an ALJ may need to apply the sequential evaluation twice: first with substance use, and—if the claimant is disabled with substance use—a second time without substance use. *Id.* at *13–15. But if the claimant is not disabled even with substance use, the claim must be denied and the ALJ

Copp lacked information about this severe impairment (because Mr. J. failed to disclose it to her) in evaluating the persuasiveness of her opinion.

Nevertheless, Mr. J. is correct that the ALJ's evaluation of Dr. Copp's opinion is flawed.  The ALJ found Dr. Copp's opinion less persuasive than the state psychological consultants' findings because those findings were "more consistent with the entire record and consider[ed] the claimant's alcohol use and mental health treatment."[52]  But as Mr. J. points out, the prior administrative findings do not mention Mr. J.'s alcohol use.[53]  The Commissioner argues this does not indicate error because the state consultants did not need to identify each piece of evidence they relied upon in their review of the entire record.[54]  But the Commissioner fails to point to any indication that the consultants reviewed evidence of alcohol use.  To the contrary, both the initial review and reconsideration decisions note "[t]here is no evidence of any substance abuse disorder/DAA issue."[55]  On this record, there is no basis to conclude the state consultants considered Mr. J.'s alcohol use.  The ALJ's statement that they did so lacks record support.

---

need not apply the sequential evaluation a second time without substance use.  *See id.* at *13.  This latter scenario occurred here: the ALJ found Mr. J. not disabled even when including alcohol use disorder.  (Tr. 24.)

[52] (Tr. 25.)

[53] (*See* Tr. 77–84, 86–93.)

[54] (*See* Comm'r's Br. 8, Doc. No. 27 (citing 20 C.F.R. § 416.913(a)(5)).)

[55] (Tr. 84, 93.)  "DAA" stands for "drug addiction and alcoholism," terms the agency acknowledges are outdated.  *See* SSR 13-2p, 2013 SSR LEXIS 2, at *5.

In discounting Dr. Copp's opinion, the ALJ heavily relied on the unsupported conclusion that the state consultants had considered Mr. J.'s alcohol use.  And the ALJ explained the state consultants' expertise on the Social Security program was "particularly important" because "the agency's regulations about drug and alcohol abuse are implicated by evidence of the claimant's substance use."[56]  But where there is no evidence the state consultants considered Mr. J.'s alcohol use, this rationale falls apart.[57]

The ALJ's other stated reasons for discounting Dr. Copp's opinion are also insufficient.  The ALJ found Dr. Copp's opinion inconsistent "with the overall evidence found in the record," and the state consultants' findings "more consistent with the entire record."[58]  But the only example of inconsistency the ALJ provided was Mr. J.'s failure to disclose his ongoing alcohol use and methadone prescription to Dr. Copp.[59]  As noted, where there is no evidence the state consultants considered Mr. J.'s alcohol use or methadone treatment, this is an invalid basis to find Dr. Copp's opinion less persuasive

---

[56] (Tr. 25.)

[57] Mr. J. argues the ALJ also erred in finding Dr. Copp was not an expert in the Social Security program, noting she regularly performs consultative examinations for disability claimants.  (*See* Opening Br. 9–10, Doc. No. 18.)  The court need not address this issue because, even assuming Dr. Copp was not an expert, the ALJ's other stated reasons for discounting her opinion were flawed and require remand.

[58] (Tr. 25.)

[59] (*Id.*)

than the state consultants' findings.[60]   And the ALJ identifies no other inconsistencies between Dr. Copp's opinion and the "overall evidence found in the record."[61]  Without more, this general statement is insufficient to support the ALJ's consistency finding.[62]

Lastly, the ALJ's statement that the state agency consultants considered Mr. J.'s "mental health treatment" does not justify discounting Dr. Copp's opinion.[63]  Dr. Copp's report references Mr. J.'s mental health treatment, including "counseling services and medication management with a psychiatrist."[64]  And the ALJ does not identify any treatment the consultants considered which Dr. Copp did not.

In sum, the ALJ failed to give valid, supported reasons for finding Dr. Copp's opinion less persuasive than the state agency consultants' findings, and he articulated no other basis for finding her opinion inconsistent with the record evidence.  In other words, the ALJ's rationale for discounting Dr. Copp's opinion is unsupported and inadequate.

---

[60] The initial reviewer referenced "opiate use, in remission," (Tr. 78), but neither state consultant mentioned methadone treatment.

[61] (Tr. 25.)

[62] *See Pino v. Kijakazi*, No. 20-0933, 2022 U.S. Dist. LEXIS 19523, at *16–17 (D.N.M. Feb. 3, 2022) (unpublished) ("[T]he ALJ must—at the very least—provide an explanation that allows a reviewing court to follow her reasoning and communicates *how* she considered the factors of supportability and consistency.  Merely describing an opinion as "inconsistent" or "unsupported" does not suffice." (citation omitted)).

[63] (Tr. 25.)

[64] (Tr. 762.)

This error requires remand.  In cases where there is no inconsistency between a medical opinion and an ALJ's RFC assessment, an ALJ's failure to properly consider a medical opinion may be harmless.[65]  But in this case, the Commissioner acknowledges the ALJ found Mr. J. was less limited than Dr. Copp opined.[66]  He does not argue harmless error.  In light of this, the ALJ's failure to properly evaluate Dr. Copp's opinion requires remand.[67]

## RECOMMENDATION

Because the ALJ did not adequately evaluate Dr. Copp's opinion, the undersigned recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings.  The parties have the right to object to

---

[65] *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014).

[66] (*See* Comm'r's Br. 9, Doc. No. 27.)

[67] The court need not address Mr. J.'s argument that the ALJ also erred in evaluating his subjective symptoms.  (*See* Opening Br. 11–15, Doc. No. 18.)  Mr. J. specifically challenges the ALJ's consideration of his hearing testimony, and remand may result in a new hearing.  Accordingly, this issue is not addressed.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[68]

DATED this 14th day of July, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[68] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).